## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

MONOTYPE IMAGING INC.; LINOTYPE GMBH; AND INTERNATIONAL TYPEFACE CORPORATION,

        Plaintiffs,

    v.

DELUXE CORPORATION,

        Defendant.

Civil Action No. _____11-11985_____

## **COMPLAINT**

1.    Plaintiffs Monotype Imaging Inc. ("Monotype"), Linotype GmbH ("Linotype"), and International Typeface Corporation ("ITC") (together, "Plaintiffs") are related companies that are leading providers of typeface products and font software programs.  This case concerns the infringement of the federally registered and distinctive trademarks AVANT GARDE, ZAPF CHANCERY, HELVETICA, MELIOR and NEW CENTURY SCHOOLBOOK (the "Marks").  As described below, the Marks are owned by ITC or Linotype and licensed to Monotype, which is entitled to enforce the rights in the Marks.

2.    Plaintiffs have used the Marks to identify their corresponding typefaces and font software programs for many years, and in some cases, decades.  Plaintiffs presently market over 2,000 different font software programs bearing the Marks and, over the past ten years, they have entered into more than 100,000 license agreements that include the Marks.  Plaintiffs have invested millions of dollars establishing and promoting their trademarks generally and, as a result, they have developed valuable goodwill in the Marks at issue.

3.    Plaintiffs recently learned that defendant Deluxe Corporation ("Defendant" or "Deluxe"), a long-time licensee of Monotype's font software programs and the nation's leading

check printer and custom printer of forms and other business products, has been using the Marks

on its website.  As shown below, Deluxe uses the AVANT GARDE Mark on its website,

www.deluxeforms.com, in a drop down menu of typeface choices:



*See* Exhibit A.

4.      Deluxe also uses the ZAPF CHANCERY, HELVETICA, MELIOR and NEW

CENTURY SCHOOLBOOK Marks in a similar way on another website, www.deluxe.com:



*See* Exhibit B.

      5.      Plaintiffs have not authorized or licensed Deluxe to use the Marks.

      6.      Given Deluxe's position as a licensee of Monotype's font software programs there is little doubt that it was aware of Plaintiffs' prior use of and rights in the Marks at the time it chose to use the Marks.  Putting aside Deluxe's actual knowledge of Plaintiffs' rights, Deluxe is deemed to be on at least constructive notice of the rights by virtue of the federal registrations for the Marks.  *See* Exhibits C-G.  As such, upon information and belief, Deluxe's use of

identical and confusingly similar marks in connection with typeface of identical designs was intentional.

7.     In addition to its trademark infringement, Deluxe also is in material breach of its license to use Monotype's font software programs.  Monotype's font software programs allow the user to display and print text in specific typefaces.  Monotype and Deluxe are parties to a license agreement that allows Deluxe to print its checks and other business products using Monotype's font software programs.  The license, however, is limited to use *by Deluxe employees on Deluxe's premises*.  The license prohibits any use of the Monotype font software programs by third-parties.  Despite this, Deluxe is allowing third-party Internet users to select and use Monotype's software programs from third-party computers located around the world.

8.     Approximately one year ago Deluxe employees inquired with Monotype for a new license to use the font software programs through the Internet.  Notwithstanding its implicit recognition that it needed a new license, after receiving price quotes, Deluxe inexplicably changed its position and asserted that it did not need a new license because its existing license allowed such use.

9.     Monotype disagreed and repeatedly demanded in writing that Deluxe cease using the Marks and abide by its existing font software license agreement.  Deluxe, however, has refused to stop using the Marks or to cure its breach of the existing font software license agreement.

10.     For these reasons and those set forth more fully below, Deluxe has committed trademark infringement in violation of 15 U.S.C. §§ 1114 and 1125, trademark infringement and dilution under Mass. G.L. ch. 110H §§ 12-14, violations of Mass. G.L. ch. 93A, and breach of contract under Minnesota law.

LIBA/2231115.3

## PARTIES

11.     Monotype is a Delaware corporation with its principal place of business at 500

Unicorn Park Drive, Woburn, Massachusetts 01801.

12.     Linotype is a foreign limited liability corporation with its principal place of

business at Werner-Reimers-Straße 2–4, 61352 Bad Homburg, Germany.

13.     ITC is a New York corporation with its principal place of business at 500 Unicorn

Park Drive, Woburn, Massachusetts 01801.

14.     Upon information and belief, defendant Deluxe is a Minnesota corporation with

its principal place of business at 3680 Victoria Street North, Shoreview, Minnesota 55126-2966.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C.

§§ 1331, 1338(a) and (b), and this Court's supplemental jurisdiction under 28 U.S.C. § 1367.

This Court also has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1332

because the matter in controversy exceeds the sum or value of $75,000, exclusive of interests or

costs, and it is between citizens of different states.

16.     Upon information and belief, venue is proper in this Court pursuant to 28 U.S.C.

§ 1391(b) and (c) because this is the judicial district where (i) a substantial part of the events or

omissions giving rise to the claim occurred; and (ii) where Defendant is subject to personal

jurisdiction.

## FACTS COMMON TO ALL COUNTS

### Plaintiffs' Business

17.     Monotype is a technology company that, among other things, designs its own

typefaces and licenses these typefaces as well as typefaces designed by third-party typeface

designers.  Typefaces are comprised of uniquely and consistently designed letters and other characters.  For example, this complaint is presented in the typeface identified by the trademark TIMES NEW ROMAN.

18.     Font software programs are computer programs that, when used with appropriate hardware and software, generate human readable renderings of typefaces both temporarily (as on a computer monitor) and permanently (as printed by a printer).  Monotype creates and owns original font software programs.  It also sublicenses for distribution original font software programs owned by Linotype, ITC, and others.

19.     Monotype is comprised of several of the former largest type companies in the world, including Linotype, ITC, AGFA Monotype, and Monotype Typography.  Today, Monotype is among the world's largest provider of typefaces and font software programs.  It owns and operates the website www.fonts.com, which offers for license a library of thousands of different font software programs.  It also licenses font software programs to original equipment manufacturers ("OEMs") for use in electronic devices such as computers, printers, mobile phones, and tablets.  Its OEM customers include many leading technology companies, including Nokia, Sony, Hewlett-Packard, and Microsoft.

**Plaintiffs' Trademarks**

20.     From the outset Monotype and its related companies have understood the value in distinctive typeface brands and have made a massive investment of time and money to promote the brands and the goodwill they embody.

21.     For example, Plaintiffs prominently advertise and market their typeface brands, including the Marks at issue here, on the www.fonts.com website.  Monotype, Linotype, and ITC have over 2,000 different font software programs bearing the Marks.  Over the past ten years,

6

Plaintiffs have entered into more than 100,000 licenses that include the Marks.  These license agreements include OEM customers who have installed Plaintiffs' font software programs bearing or including the Marks in more than 100,000,000 consumer electronics products.

22.     As noted above, Plaintiffs have spent millions of dollars marketing and promoting their trademarks, including AVANT GARDE, ZAPF CHANCERY, HELVETICA, MELIOR and NEW CENTURY SCHOOLBOOK, over many years.  Consumers exclusively associate the Marks with Plaintiffs as the source of the typefaces and corresponding font software programs.  As a result of Plaintiffs' efforts, the Marks have developed substantial goodwill, which is a valuable asset of ITC and Linotype.

23.     In order to protect its valuable brands, ITC applied for and was granted a federal registration for the AVANT GARDE Mark for "computer software for use in displaying and printing digital typeface designs and typographic ornaments."  *See* Exhibit C (U.S. Reg. No. 2,656,302, issued December 3, 2002).   ITC likewise applied for and was granted a federal registration for the ZAPF CHANCERY Mark for "computer software for use in displaying and printing digital typeface designs and typographic ornaments."  *See* Exhibit D (U.S. Regis. No. 2,788,114, issued December 2, 2003).

24.     Similarly, Linotype applied for and was granted a federal registration for the HELVETICA Mark for "software for printing type fonts; downloadable software containing type fonts and used for printing said fonts; software for generating, displaying, and printing fonts; data carriers with software for printing type fonts; and computer-readable media with computer-executable instructions for generating, displaying, and printing type font."  *See* Exhibit E (U.S. Regis. No. 3058966, issued February 14, 2006).  Linotype also applied for and was granted a federal registration for the MELIOR Mark for "software for type fonts; downloadable software

containing type fonts; software for generating, displaying, and printing fonts; data carriers with software for type fonts; data carriers with type fonts; computer-readable media with computer executable instructions for generating, displaying, and printing type fonts."  *See* Exhibit F (U.S. Reg. No. 3,098,223, issued May 30, 2006).  It also applied for and was granted a federal registration for the NEW CENTURY SCHOOLBOOK Mark for "software for creating typographical characters; typographical characters stored on data carriers; data carriers containing digitally stored typographical characters; and downloadable digitized printing fonts." *See* Exhibit G (U.S. Regis. No. 3224030, issued April 3, 2007).

25.     ITC and Linotype also have applied for and received Massachusetts trademark registrations for the AVANT GARDE, ZAPF CHANCERY, HELVETICA, MELIOR and NEW CENTURY SCHOOLBOOK Marks for "computer software for use in displaying and printing digital typeface designs, fonts and typographic ornaments."  *See* Exhibits C-G.

26.     Monotype has entered into intra-company license agreements with ITC and Linotype concerning the Marks and it is expressly entitled to use the Marks and enforce its related companies' rights in the same.

### Plaintiff's Font Software Program License Agreements

27.     Monotype provides its font software programs and Linotype and ITC font software programs to third-parties under a license.  For example, many of Monotype's customers agree to a standard End User License Agreement that governs use of the software programs, *e.g.*, whether it may be used for an individual or multiple users or for personal or commercial purposes.  *See generally* http://www.fonts.com/Legal/MI-EULA.htm, visited October 20, 2011.

28.     Monotype also enters into more complex licensing agreements with businesses to permit the use of font software programs in or on commercial products.  Traditionally, Monotype

has licensed font software programs to businesses by limiting use of the software to the corporate licensee, for use by its employees on its premises.  As described more fully below, this is the type of license Defendant entered into with Monotype in 1996 and that is the subject of this action.

29.    As technology advanced, Monotype developed new licensing models to allow its business customers to use Monotype's font software programs in ways that were not contemplated previously or were not previously technologically feasible.  For example, the development and availability of high-speed Internet service and e-commerce lead Monotype to develop font licensing models that permitted corporate licensees to allow third-parties to use Monotype's software programs using computers not located on the licensee's premises.  In other words, in contrast to older license agreements, this new type of license agreement may allow an unlimited number of Internet users to give instructions to Monotype's font software programs by using keyboards connected to their own personal computers located around the world.  Deluxe does not have this type of license.

### Deluxe and Its Business

30.    Deluxe is a multi-faceted business services provider that is a worldwide leader in check and business printing.  It claims to have four million small businesses, 6,200 financial institutions, and six million individuals as customers.  Its 2010 annual revenue was more than $1.4 billion.

31.    For many years Deluxe has offered custom check and business printing by taking orders through its catalogs or over the telephone.  Its printing services require the use of font software programs, insofar as customers could choose various typefaces for printing on the checks, business forms, labels, promotional items, or other products they ordered.

32.     To that end, Deluxe and Monotype's predecessor Monotype Typography Inc. entered into a license agreement entitled "Multiple Copy End User License Agreement" dated April 30, 1996 (the "License").[1]  In that License, Monotype granted Deluxe a "non-exclusive, perpetual, enterprise-wide license" to "use, reproduce, and display the Licensed Product(s) and any data therein or generated therefrom, including without limitation, Bitmaps and Outlines on Systems *for Deluxe's use on its Premises*."  *Id*. ¶2.01 (emphasis added).  "Premises" is defined as "an office or manufacturing facility occupied and controlled by Deluxe to carry out its corporate functions."  *Id*. ¶1.01(g).  The License also provided that Deluxe "may physically transfer the Licensed Products through a network," but stated that "Deluxe may not transfer Licensed Products to any third-party."  *Id*. ¶2.01.

33.     The License contained additional provisions that further limit Deluxe's rights.  Specifically, Deluxe agreed that it "shall use the Related Materials and Licensed Product(s) only as expressly permitted by this Agreement."  *Id*. ¶4.01.  Deluxe also agreed that it "shall not disclose or make available any portion of Licensed Product(s) or Related Materials in any form to any person other than Deluxe's employees, without prior written consent of Monotype."  *Id*. ¶4.02.[2]  The License granted Deluxe was "for use on 100 Systems," *id.* Ex. A, and each System was to consist of "one printer or one typesetter or imagesetter (or any output device) with unlimited attached personal computers and monitors." *Id.* 1.01(i).

34.     The License included the font software programs corresponding to the Marks, *e.g.*, the font software programs that, when executed, allows a computer to create the ITC

---

[1]  The terms of the License limit its disclosure and it is marked "Confidential."  As a result, Plaintiffs have not attached it to the complaint as an exhibit.  Plaintiffs will submit the License as an exhibit after having obtained leave of Court pursuant to Local Rule 7.2 and subsequent to entry of a mutually agreeable Protective Order.

[2] In addition, the License provides that the agreement and all transactions under it shall be governed by Minnesota law, where Deluxe has its principal place of business.

10

typeface branded AVANT GARDE.  The License did not, however, grant Deluxe the right to use the Marks.

35.     Monotype performed all of its obligations under the license and Deluxe paid its license fees and used Monotype's font software programs in its business for several years.

### Deluxe's Internet Business

36.     In late 2010 Deluxe inquired with Monotype seeking a license to use Monotype's font software programs in connection with what it described as a new Web-to-Print business line.

37.     Deluxe explained that its Web-to-Print business would allow Deluxe customers to customize their products by giving their customers the ability to type text, select different typeface designs for the text, and view the customized product on the Internet in nearly instantly. Specifically, a customer would use their own computer to go to one of several Deluxe websites, choose an item to customize and purchase, select a typeface design from a drop down menu, and then type in the text they want to customize.  They would then nearly instantly see their custom text shown in the typeface they selected on their computer screen.  Further, the customer would be able to print the document in the customized text created using the selected font software program on any printer attached to their computers.

38.     After receiving information from Deluxe concerning the scope of its proposed use of Monotype's font software programs, Monotype provided Deluxe with model license terms and estimates for its license fees.  Monotype also investigated Deluxe's existing use of the font software programs and discovered that Deluxe was already making the Monotype font software programs available for use by third-parties on the Internet as described above.

39.     After protracted discussions concerning Deluxe's existing and planned use of the Monotype font software programs on the Internet, Deluxe asserted that it no longer needed a new

license because the original license allowed the use.  Counsel for the parties then engaged in numerous, unsuccessful communications concerning Plaintiffs' trademark rights and the need for a web-server license.

**<u>Deluxe's Trademark Infringement and Breach of the License</u>**

40.    As of the date of this complaint, Deluxe continues to use Monotype's Marks without authorization and further continues to use Monotype's font software programs in breach of the License.  For example, if the Court wanted to order a set of custom forms it could access the www.deluxe.com website, chose the type of form it wanted, enter the text it wanted from the Court's computer, *e.g.*, "United States District Court, District of Massachusetts, Boston, MA," and Deluxe would transmit the following to the Court's computer screen which could be viewed on the Court's monitor and printed out on the Court's computer:



*See* Exhibit H.

41.     As shown above and in Exhibits A and B, Deluxe uses Plaintiffs' registered Marks in commerce in connection with its Internet business.  Plaintiffs have not authorized or licensed Deluxe to use the Marks.

42.     Deluxe is using marks that are identical to the Plaintiffs' Marks in connection with the identical goods that Plaintiffs offer, namely font software programs.

43.     Deluxe is also using the identical marks on the Internet, which is the same channel of commerce and marketing that Plaintiffs use.  As set forth above, Plaintiffs offer their font software programs on the Internet and license others to use their font software on the Internet.

44.     Deluxe is targeting the same customers as Plaintiffs because its customers are individuals who want to use unique typefaces to customize goods.  If Deluxe was properly licensed, the Marks would be used to attract the identical customers.

45.     Deluxe's use of marks that are identical to the Plaintiffs' Marks, on or in connection with the identical corresponding typefaces is likely to cause confusion, mistake, and deception among customers and potential customers, and to cause individuals and businesses to erroneously believe that Monotype has an affiliation, connection, or association with Deluxe, or that Monotype has sponsored or approved the use of its marks by Deluxe, all to the irreparable harm and detriment of Monotype and the substantial goodwill it has developed in the Marks.

46.     Deluxe also suggests to consumers that the fonts and corresponding brands belong to Deluxe and not Plaintiffs.  In a web page where customers can learn "About Type Styles" Deluxe states "Typestyles immediately set a feel for your business.  *Our formats* let you specify a style for your company name." (Emphasis added.)

13



*See* Exhibit I.

47.     Deluxe's representations are likely to cause confusion, or to cause mistake, or to deceive as to the origin of the typefaces and also affirmatively misrepresent the nature, characteristics, and origin of the typefaces, all to the irreparable harm and detriment of Plaintiffs and the substantial goodwill they have developed in the Marks.

48.     Importantly, Deluxe does not need to use the Marks to inform its customers how their products will appear.  For some of Deluxe's products on its websites it uses the words "YOUR COMPANY NAME HERE" in different typefaces:



LIBA/2231115.3

*See* Exhibit J.  Putting aside the licensing issues, this approach permits the customer to make his or her selection and *avoids the use of Plaintiffs' Marks*.

49.      In light of the foregoing, Deluxe's use of the Marks is likely to cause confusion and irreparable harm to Plaintiffs.  As a result, its use of these Marks, and any other confusingly similar marks, should be enjoined.

50.      With respect to the font software programs, Deluxe contends that the use of the font software programs through the Internet is permissible under the existing License.

51.      As described above, however, Deluxe's Internet business allows third-parties, namely users of Deluxe's various websites, to use the font software programs in breach of ¶2.01 of the License, which limits permissible use to "Deluxe's use on its Premises" and ¶4.01, which allows Deluxe to use the software "only as expressly permitted by this Agreement."  Upon information and belief, in Deluxe's Internet ordering system, a third-party *not on Deluxe's premises* sends data to the font software that automatically commands certain actions by Monotype's font software programs.

52.      Deluxe's Internet business also transfers the Licensed Products to third parties in breach of ¶2.01, which prohibits the transfer the Licensed Products "to any third party."  Upon information and belief, Deluxe's on-line ordering service transmits an image of the rendered custom text in the selected typeface to the user.  The License defines Licensed Products to include "bitmaps," which is defined as a "machine readable digital representation of a single Typeface style in a fixed resolution, weight, width, format, and point size."  License ¶1.01(a).  In other words, an image or picture of the rendered font.  The customized text image Deluxe transmits to the Internet user is a "bitmap" as defined in the License.  Thus, Deluxe's Internet

15

business transfers a Licensed Product (the bitmap image) to a third-party in breach of the License.

53.     Deluxe's Internet business also discloses or makes available Monotype's font software programs in breach of ¶4.02, which states that Deluxe "shall not disclose or make available any portion of Licensed Product(s) or Related Materials in any form to any person other than Deluxe's employees, without prior written consent of Monotype."  Upon information and belief, in Deluxe's on-line system, Deluxe discloses and makes available the font software programs and/or related materials to third parties.

54.     Finally, Deluxe's Internet business breaches ¶2.01 because it permits the font software programs to output text on a virtually infinite number of output devices and not merely the 100 output devices ("Systems") permitted by the License.  In other words, while the License limits Deluxe's printing capability to 100 *of its own printers*, Deluxe is allowing third-parties to print the output of the font software programs using non-Deluxe printers.  For example, the screenshots of the executed fonts above were initially printed on the Goodwin Procter printers and are also likely available for print by the Court's printer.

55.     Deluxe's use of Monotype's font software programs is in breach of the License and unauthorized by Monotype.

56.     The established market value of the use of Plaintiffs' Marks and the unauthorized use of Monotype's font software programs is greater than $75,000.

## COUNT I
### (Trademark Infringement—15 U.S.C. § 1114)

57.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 56 above as if fully set forth herein.

58.     As described above, ITC is the owner of the federally registered AVANT GARDE and ZAPF CHANCERY Marks and Linotype is the owner of the federally registered HELVETICA, MELIOR, and NEW CENTURY SCHOOLBOOK Marks.  Monotype is a licensee of the Marks and is expressly authorized to enforce trademark rights in the same.

59.     ITC and Linotype's ownership and use in commerce of the Marks predates the use by Deluxe of the identical marks.  ITC and Linotype's federal registrations also predate the use by Deluxe of the identical marks.

60.     Upon information and belief, given Deluxe's position as a licensee of Monotype's font software programs, which included font software programs corresponding to the Marks, Deluxe's conduct is willful and intentional and intended to free-ride off of the goodwill associated with the Marks.  Deluxe is and was at all relevant times at least constructively aware of ITC's and Monotype's prior use, ownership, and registration of the Marks, and Deluxe's conduct is therefore also willful and intentional.

61.     Deluxe uses the identical AVANT GARDE, ZAPF CHANCERY, HELVETICA, MELIOR and NEW CENTURY SCHOOLBOOK marks in interstate commerce in connection with the sale, offering for sale, distribution, and/or advertising of its goods or services.

62.     Deluxe's use in commerce of the Marks, as described above, constitutes trademark infringement in violation of 15 U.S.C. § 1114 in that it is without Plaintiffs' consent and is likely to cause confusion, mistake, and/or deception among consumers.  Such conduct will irreparably harm Plaintiffs and the goodwill they have developed in Marks.

LIBA/2231115.3

63.     As a direct and proximate result of Deluxe's violations of 15 U.S.C. § 1114, Plaintiffs have been and will continue to be damaged.

64.     Upon information and belief, Deluxe has realized, and continues to realize, substantial revenues, profits, and other benefits rightfully belonging to Plaintiffs as a result of its wrongful conduct.

65.     Deluxe's conduct is causing and will continue to cause Plaintiffs to suffer irreparable harm and, unless Deluxe is restrained, Plaintiffs will continue to be so damaged, because they have no adequate remedy at law.

## COUNT II
### (False Designation of Origin—15 U.S.C. § 1125(a))

66.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 65 above as if fully set forth herein.

67.     As described above, ITC is the owner of the federally registered AVANT GARDE and ZAPF CHANCERY Marks and Linotype is the owner of the federally registered HELVETICA, MELIOR, and NEW CENTURY SCHOOLBOOK Marks.  Monotype is a licensee of the Marks and expressly authorized to enforce trademark rights in the same.

68.     ITC and Linotype's ownership and use in commerce of the Marks predates the use by Deluxe of the identical marks.  ITC and Linotype's federal registrations also predate the use by Deluxe of the identical marks.

69.     Upon information and belief, given Deluxe's position as a licensee of Monotype's font software programs, which included font software programs corresponding to the Marks, Deluxe's conduct is willful and intentional and intended to free-ride off of the goodwill associated with the Marks.  Deluxe is and was at all relevant times at least constructively aware

of ITC's and Monotype's prior use, ownership, and registration of the Marks, and Deluxe's conduct is therefore also willful and intentional.

70.     Deluxe uses the identical AVANT GARDE, ZAPF CHANCERY, HELVETICA, MELIOR and NEW CENTURY SCHOOLBOOK marks in interstate commerce in connection with the sale, offering for sale, distribution, and/or advertising of its goods or services.

71.     Deluxe's use in commerce of the identical marks, as described above, constitutes false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A) in that it is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of Deluxe with Plaintiffs and/or as to the origin, sponsorship, or approval by Plaintiffs of Deluxe's goods, services, or commercial activity.  Such conduct will irreparably harm Plaintiffs and the goodwill they have developed in Marks.

72.     Deluxe's use in commerce of the identical marks, as described above, constitutes false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(B) in that it is a false designation of origin, false or misleading description of fact, and false or misleading representation of fact, which misrepresents the nature, characteristics, qualities, and geographic origin of Plaintiffs goods.  Such conduct will irreparably harm Plaintiffs and the goodwill they have developed in Marks.

73.     Upon information and belief, Deluxe has realized, and continues to realize, substantial revenues, profits, and other benefits rightfully belonging to Plaintiffs as a result of its wrongful conduct.

74.     Deluxe's conduct is causing and will continue to cause Plaintiffs to suffer irreparable harm and, unless Deluxe is restrained, Plaintiffs will continue to be so damaged, because they have no adequate remedy at law.

## COUNT III
### (Trademark Infringement—Mass. Gen. Laws ch. 110H §§ 12 and 14)

75.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 74 above as if fully set forth herein.

76.     As described above, ITC is the owner of the AVANT GARDE and ZAPF CHANCERY Marks, which are registered in Massachusetts.  As described above, Linotype is the owner of the HELVETICA, MELIOR, and NEW CENTURY SCHOOLBOOK Marks, which also are registered in Massachusetts.  Monotype is a licensee of the Marks and expressly authorized to enforce trademark rights in the same.

77.     Plaintiffs' ownership and use in commerce of the Marks predates the use by Deluxe of the identical and confusingly similar marks.

78.     Upon information and belief, given Deluxe's position as a licensee of Monotype's font software programs, which included font software programs corresponding to the Marks, Deluxe's conduct is willful and intentional and intended to free-ride off of the goodwill associated with the Marks.  Deluxe is and was at all relevant times at least constructively aware of ITC's and Monotype's prior use, ownership, and registration of the Marks, and Deluxe's conduct is therefore also willful and intentional.

79.     Deluxe uses the identical AVANT GARDE, ZAPF CHANCERY, HELVETICA, MELIOR and NEW CENTURY SCHOOLBOOK marks in Massachusetts in connection with the sale, offering for sale, distribution, and/or advertising of its goods or services.

80.     Deluxe's use of the identical marks, as described above, constitutes trademark infringement in violation of Mass. Gen. Laws ch. 110H §§ 12 and 14 in that it is without Plaintiffs' consent and is likely to cause confusion, mistake, and/or deception among consumers, all to the irreparable injury of Plaintiffs and the goodwill they have developed in the Marks.

LIBA/2231115.3

81.     As a direct and proximate result of Deluxe's violations of Mass. Gen. Laws ch. 110H §§ 12 and 14, Plaintiffs have been and will continue to be damaged.

82.     Upon information and belief, Deluxe has realized, and continues to realize, substantial revenues, profits, and other benefits rightfully belonging to Plaintiffs as a result of its wrongful conduct.

83.     Deluxe's conduct is causing and will continue to cause Plaintiffs to suffer irreparable harm and, unless Deluxe is restrained, Plaintiffs will continue to be so damaged, because they have no adequate remedy at law.

## COUNT IV
### (Trademark Dilution—Mass. Gen. Laws ch. 110H § 13)

84.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 83 above as if fully set forth herein.

85.     As described above, ITC is the owner of the AVANT GARDE and ZAPF CHANCERY Marks, which are registered in Massachusetts.  As described above, Linotype is the owner of the HELVETICA, MELIOR, and NEW CENTURY SCHOOLBOOK Marks, which also are registered in Massachusetts.  Monotype is a licensee of the Marks and expressly authorized to enforce trademark rights in the same.

86.     The Marks are distinctive and have acquired secondary meaning among consumers, who exclusively associate the Marks with ITC and Linotype.

87.     Plaintiffs' ownership and use in commerce of the Marks predates the use by Deluxe of the identical and confusingly similar marks.

88.     Upon information and belief, given Deluxe's position as a licensee of Monotype's font software programs, which included font software programs corresponding to the Marks, Deluxe's conduct is willful and intentional and intended to free-ride off of the goodwill

21

associated with the Marks.  Deluxe is and was at all relevant times at least constructively aware of ITC's and Monotype's prior use, ownership, and registration of the Marks, and Deluxe's conduct is therefore also willful and intentional.

89.     Deluxe's use in commerce of the identical and confusingly similar identical AVANT GARDE, ZAPF CHANCERY, HELVETICA, MELIOR and NEW CENTURY SCHOOLBOOK marks, as described above, constitutes common law and statutory dilution in that it is without Plaintiffs' consent and creates and will continue to create a likelihood of injury to Plaintiffs' business reputation and/or a likelihood of dilution of the distinctive quality of the Marks.

90.     As a direct and proximate result of Deluxe's dilution of the Marks, Plaintiffs have been damaged and will continue to be damaged.

91.     Upon information and belief, Deluxe has realized, and continues to realize, substantial revenues, profits, and other benefits rightfully belonging to Plaintiffs as a result of its wrongful conduct.

## COUNT V
### (Unfair Competition—Mass. Gen. Laws ch. 93A)

92.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 91 above as if fully set forth herein.

93.     Plaintiffs and Deluxe are persons engaged in the conduct of trade or commerce within the meaning of Mass. Gen. Laws ch. 93A, § 11.

94.     Deluxe's acts, conduct, and practices described above occurred and are occurring primarily and substantially within the Commonwealth of Massachusetts.

95.     Deluxe's acts, conduct, and practices described above, including without limitation the use of the identical and confusingly similar identical AVANT GARDE, ZAPF

LIBA/2231115.3

CHANCERY, HELVETICA, MELIOR and NEW CENTURY SCHOOLBOOK marks in connection with the promotion, sale, or licensing of services in Massachusetts, constitutes unfair methods of competition and/or unfair or deceptive acts or practices, which are unlawful under Mass. Gen. Laws ch. 93A.

96.    As a direct and proximate result of Deluxe's violations of Mass. Gen. Laws ch. 93A, Plaintiffs have been damaged and will continue to be damaged.

**COUNT VI**
**(Breach of Contract – Minnesota Law)**

97.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 96 above as if fully set forth herein.

98.    As described above, the foregoing acts of Deluxe constitute breach of contract, specifically, "Multiple Copy End User License Agreement" and dated April 30, 1996 (the "License").

99.    As described above, the License is a valid, binding contract between Monotype and Deluxe.

100.    As described above, Monotype performed all material parts of the contract, including providing the Licensed Products (as defined in the License) to Deluxe.

101.    As described above, Deluxe materially breached the contract, including, but not limited to, ¶¶ 2.01, 4.01, and 4.02 thereof.

102.    As a direct and proximate cause of Deluxe's breach, Monotype has suffered monetary damages in an amount to be determined at trial.

****

## **PRAYERS FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests the following relief:

A.     That this Court preliminarily and permanently enjoin Deluxe, its employees, agents, servants, and all in privity with it, from using any marks confusingly similar to the AVANT GARDE, ZAPF CHANCERY, HELVETICA, MELIOR and NEW CENTURY SCHOOLBOOK Marks, or any derivatives thereof or any marks similar thereto, in commerce;

B.     That this Court preliminarily and permanently enjoin Deluxe, its employees, agents, servants, and all in privity with it, from using Monotype's font software programs in connection with its Internet business without a license;

C.     That this Court award Plaintiffs damages in an amount to be determined at trial;

D.     That this Court award Plaintiffs treble damages;

E.     That this Court award Plaintiffs its attorneys' fees and costs; and

F.     That this Court award Plaintiffs such other and further relief that this Court deems just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury of all claims so triable.

****

Dated: November 8, 2011

Respectfully submitted,

/s/ Mark S. Puzella
Mark S. Puzella (BBO No. 644850)
R. David Hosp (BBO No. 634091)
GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, Massachusetts 02109-2881
Tel: (617) 570-1000
Fax: (617) 523-1231
mpuzella@goodwinprocter.com
dhosp@goodwinprocter.com

Attorneys for

MONOTYPE IMAGING INC.,
LINOTYPE GMBH, and INTERNATIONAL
TYPEFACE CORPORATION.

25