UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MONOTYPE IMAGING, INC.;<br>LINOTYPE GMBH; AND<br>INTERNATIONAL TYPEFACE<br>CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>DELUXE CORPORATION,<br><br>Defendant. | Civil Action No. 1:11-cv-11985-NMG |

**ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS
OF DEFENDANT DELUXE CORPORATION**

Defendant Deluxe Corporation ("Defendant" or "Deluxe") responds to the Complaint filed by Plaintiffs Monotype Imaging Inc. ("Monotype"), Linotype GmbH ("Linotype"), and International Typeface Corporation ("ITC") (collectively, "Plaintiffs"), pursuant to Fed. R. Civ. P. 8(b)(3), whereby Deluxe generally denies all averments in the Complaint that are not specifically admitted herein and further states as follows:

<u>**ANSWER**</u>

1.      Admitted to the extent that this action purports to be an action for trademark infringement and related causes. Deluxe lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

2.      Deluxe lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

3.      Admitted that Deluxe is in the business of, *inter alia*, printing custom checks, forms, and other business products, that it holds a license for Monotype's font software

programs, and that the document attached to the Complaint as Exhibit A appears to be a copy of a screenshot captured from one of Deluxe's websites; otherwise, denied.

4.     Admitted that the document attached to the Complaint as Exhibit B appears to be a copy of a screenshot captured from one of Deluxe's websites; otherwise, denied.

5.     Denied.

6.     Admitted that Deluxe was aware of Plaintiffs' use of the names "Avant Garde," "Zapf Chancery," "Helvetica," "Melior," and "New Century Schoolbook" (collectively, the "Alleged Marks") and that Deluxe used the Alleged Marks intentionally to refer to Plaintiffs' fonts.  The second sentence states a conclusion of law and, therefore, no response on the part of Deluxe is required.  Deluxe denies the remaining allegations in this paragraph.

7.     As to the first sentence, denied.  As to the second sentence, admitted, on information and belief.  As to the third through fifth sentences, Deluxe admits that Monotype and Deluxe are parties to a license agreement and states that the license agreement is a written document, the contents of which speak for themselves; to the extent the allegations are inconsistent therewith, denied.  As to the sixth sentence, denied.

8.     Admitted that approximately one year ago, Deluxe employees inquired with Monotype for a new license for a new customer ordering platform that Deluxe was developing; otherwise, denied.

9.     Admitted that Deluxe received correspondence from Monotype demanding that Deluxe cease using the Alleged Marks and curtail its use of the font software, despite the fact that Deluxe is entitled to such use pursuant to license and pursuant the doctrine of nominative fair use.  Admitted that Deluxe has not ceased or curtailed its permitted use in response to Monotype's correspondence.  Otherwise, denied.

- 2 -

10.     Denied.

## PARTIES

11.     Deluxe lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

12.     Deluxe lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

13.     Deluxe lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

14.     Admitted.

## JURISDICTION AND VENUE

15.     This paragraph states a conclusion of law and, therefore, no response on the part of Deluxe is required.

16.     This paragraph states a conclusion of law and, therefore, no response on the part of Deluxe is required.

## FACTS COMMON TO ALL COUNTS

### Plaintiffs' Business

17.     Deluxe lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

18.     Deluxe lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

19.     Deluxe lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

**Plaintiffs' Alleged Trademarks**

20.     Deluxe lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

21.     Deluxe lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

22.     Deluxe lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

23.     Admitted that the documents attached to the Complaint as Exhibit C include what appears to be a copy of a printout from the United States Patent and Trademark Office ("USPTO") website reflecting a registration for AVANT GARDE issued on December 3, 2002, the contents of which document speak for themselves.  Admitted that the documents attached to the Complaint as Exhibit D include what appears to be a copy of a printout from the USPTO website reflecting a registration for ZAPF CHANCERY issued on December 2, 2003, the contents of which document speak for themselves.  Otherwise, Deluxe lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

24.     Admitted that the documents attached to the Complaint as Exhibit E include what appears to be a copy of a printout from the USPTO website reflecting a registration for HELVETICA issued on February 14, 2006, the contents of which document speak for themselves.  Admitted that the documents attached to the Complaint as Exhibit F include what appears to be a copy of a printout from the USPTO website reflecting a registration for MELIOR issued on May 30, 2006, the contents of which document speak for themselves.  Admitted that the documents attached to the Complaint as Exhibit G include what appears to be a copy of a printout from the USPTO website reflecting a registration for NEW CENTURY

SCHOOLBOOK issued on April 3, 2007, the contents of which document speak for themselves. Otherwise, Deluxe lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

25.    Admitted that the documents attached to the Complaint as Exhibits C-G include what appear to be copies of Massachusetts trademark registration certificates for AVANT GARDE, ZAPF CHANCERY, HELVETICA, MELIOR, and NEW CENTURY SCHOOLBOOK, the contents of which documents speak for themselves.  Otherwise, Deluxe lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

26.    Deluxe lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

### Plaintiffs' Font Software Program License Agreements

27.    Deluxe lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

28.    Deluxe lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

29.    Deluxe lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

### Deluxe and Its Business

30.    As to the first sentence, admitted that Deluxe is a multifaceted business services provider, an industry leader in the United States, and the nation's leading direct-to-consumer check supplier; otherwise, denied.  As to the second and third sentences, admitted.

31.     As to the first sentence, admitted.  As to the second sentence, admitted that Deluxe's printing services typically utilize font software programs, and that customers can choose from among various typefaces for printing on the checks, business forms, labels, promotional items, or other products they order; otherwise, denied.

32.     Admitted that there exists a license agreement entitled "Multiple Copy End User License Agreement" dated April 30, 1996 (the "License") between Deluxe and Monotype Typography, Inc.  As to the remaining allegations of this paragraph, Deluxe states that the License is a written document that speaks for itself; to the extent the allegations are inconsistent therewith, denied.

33.     Deluxe states that the License is a written document that speaks for itself; to the extent the allegations are inconsistent therewith, denied.

34.     Deluxe states that the License is a written document that speaks for itself; to the extent the allegations are inconsistent therewith, denied.

35.     Deluxe lacks knowledge or information sufficient to form a belief as to the truth of the allegation that Monotype performed all of its obligations under the License; otherwise, admitted.

**Deluxe's Internet Business**

36.     Admitted.

37.     Admitted that Deluxe explained that its Web-to-Print business would allow Deluxe customers to customize their products by typing text, selecting different typeface designs for the text, and receiving via the Internet an editable electronic preview of the customized product.  Admitted that Deluxe explained that customers would use their own computers to go to one of several Deluxe websites, choose an item to customize and purchase, select a typeface design from a dropdown menu, and then type in their desired text.  Admitted that Deluxe

explained that the customer would then nearly instantly see their specified text shown in the

typeface they selected on their computer screen, and that the customer would be able to

download a high-resolution .pdf document containing an embedded version of the font software,

which would permit them to edit and manipulate the text appearing in the selected typeface on

the .pdf preview for their own use.  Admitted that Deluxe explained that customers would be

able to print the .pdf preview containing the customized text created using the selected font

software program on any printer attached to their computers.  Otherwise, denied.

38.    Admitted that Monotype provided Deluxe with model license terms and estimates

for its fees.  Deluxe lacks knowledge or information sufficient to form a belief as to the truth of

the allegation that Monotype investigated Deluxe's existing use.  Otherwise, denied.

39.    Admitted that Deluxe elected not to take a license from Monotype for its new

business line and that it properly asserted that its existing license covered its existing use;

admitted that Deluxe engaged in communications with Monotype's counsel; otherwise, denied.

**Deluxe's Alleged Trademark Infringement and Breach of License**

40.    Admitted that the document attached to the Complaint as Exhibit H appears to be

a copy of a screenshot captured from one of Deluxe's websites.  As to the second sentence,

admitted that if the Court followed the steps described, Deluxe would transmit to the Court's

computer a static graphic image file, not including any elements of any font software programs,

which could, on information and belief, be viewed on the Court's monitor and printed on the

Court's printer.  Otherwise, denied.

41.    Admitted that Deluxe makes nominative fair use of Plaintiffs' font names to refer

to Plaintiffs' fonts that Deluxe is authorized to use; otherwise, denied.

42.    Denied.

43.     As to the first sentence, denied.  Deluxe lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of this paragraph.

44.     Denied.

45.     Denied.

46.     Admitted that the document attached to the Complaint as Exhibit I appears to be a copy of a screenshot captured from one of Deluxe's websites.  As to the second sentence, admitted.  Otherwise, denied.

47.     Denied.

48.     Admitted that the document attached to the Complaint as Exhibit J appears to be a copy of a screenshot captured from one of Deluxe's websites.  As to the second sentence, admitted.  Otherwise, denied.

49.     Denied.

50.     Denied inasmuch as the phrase "use of the font software programs through the Internet" is vague and ambiguous.

51.     Denied.

52.     As to the second sentence, admitted.  As to the third sentence, Deluxe states that the License is a written document that speaks for itself; to the extent the allegations are inconsistent therewith, denied.  As to the remaining allegations in this paragraph, denied.

53.     Denied.

54.     As to the third sentence, Deluxe lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained therein; otherwise, denied.

55.     Denied.

56.     Deluxe lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

## COUNT I
### (Trademark Infringement – 15 U.S.C. § 1114)

57.     Deluxe restates and incorporates by reference its answers to paragraphs 1-56 as if fully set forth herein.

58.     Deluxe lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

59.     Deluxe lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

60.     Denied.

61.     Denied.

62.     Denied.

63.     Denied.

64.     Denied.

65.     Denied.

## COUNT II
### (False Designation of Origin – 15 U.S.C. § 1125(a))

66.     Deluxe restates and incorporates by reference its answers to paragraphs 1-65 as if fully set forth herein.

67.     Deluxe lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

68.     Deluxe lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

69.     Denied.

70.    Denied.

71.    Denied.

72.    Denied.

73.    Denied.

74.    Denied.

## COUNT III
### (Trademark Infringement – Mass. Gen. Laws ch. 110H §§ 12 and 14)

75.    Deluxe restates and incorporates by reference its answers to paragraphs 1-74 as if fully set forth herein.

76.    Deluxe lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

77.    Deluxe lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

78.    Denied.

79.    Denied.

80.    Denied.

81.    Denied.

82.    Denied.

83.    Denied.

## COUNT IV
### (Trademark Dilution – Mass. Gen. Laws ch. 110H § 13)

84.    Deluxe restates and incorporates by reference its answers to paragraphs 1-83 as if fully set forth herein.

85.    Deluxe lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

86.     Deluxe lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

87.     Deluxe lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

88.     Denied.

89.     Denied.

90.     Denied.

91.     Denied.

## COUNT V
### (Unfair Competition – Mass. Gen. Laws ch. 93A)

92.     Deluxe restates and incorporates by reference its answers to paragraphs 1-91 as if fully set forth herein.

93.     This paragraph states a conclusion of law and, therefore, no response on the part of Deluxe is required.

94.     Denied.

95.     Denied.

96.     Denied.

## COUNT VI
### (Breach of Contract – Minnesota Law)

97.     Deluxe restates and incorporates by reference its answers to paragraphs 1-96 as if fully set forth herein.

98.     Denied.

99.     Admitted that the License is a valid, binding contract between Monotype and Deluxe; otherwise, denied.

100.    Deluxe lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

101.    Denied.

102.    Denied.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

103.    Plaintiffs' Complaint fails to state a claim upon which relief can be granted under law.

### SECOND AFFIRMATIVE DEFENSE

104.    Plaintiffs' claims are barred by acquiescence.

### THIRD AFFIRMATIVE DEFENSE

105.    Plaintiffs' claims are barred by the doctrine of laches.

### FOURTH AFFIRMATIVE DEFENSE

106.    Plaintiffs' claims are barred by the doctrine of estoppel.

### FIFTH AFFIRMATIVE DEFENSE

107.    Plaintiffs' claims are barred by the doctrine of waiver.

### SIXTH AFFIRMATIVE DEFENSE

108.    Plaintiffs' claims are barred by applicable statutes of limitations.

### SEVENTH AFFIRMATIVE DEFENSE

109.    Plaintiffs' claims are barred by the doctrine of nominative fair use.

### EIGHTH AFFIRMATIVE DEFENSE

110.    Plaintiffs' claims are barred by the doctrine of fair use.

### NINTH AFFIRMATIVE DEFENSE

111.    Plaintiffs' claims are barred by the doctrine of unclean hands.

### TENTH AFFIRMATIVE DEFENSE

112.    Plaintiffs' claims are barred because they would result in unjust enrichment to Plaintiffs.

### ELEVENTH AFFIRMATIVE DEFENSE

113.    Plaintiffs' claims are barred because Plaintiffs are not entitled to damages and Plaintiffs have suffered no damages.

### TWELFTH AFFIRMATIVE DEFENSE

114.    Plaintiffs' claims are barred because there is no likelihood of confusion between Plaintiffs' use of the Alleged Marks and Deluxe's use of the Alleged Marks, and/or the Alleged Marks are not valid trademarks.

### THIRTEENTH AFFIRMATIVE DEFENSE

115.    Plaintiffs' claims are barred because Deluxe's conduct was and is licensed by Plaintiffs.

### FOURTEENTH AFFIRMATIVE DEFENSE

116.    Plaintiffs' claims are barred by the doctrine of accord and satisfaction.

### FIFTEENTH AFFIRMATIVE DEFENSE

117.    Plaintiffs' claims are barred because Deluxe fully performed its obligations under the parties' contract.

### COUNTERCLAIMS

For its counterclaims herein, Deluxe Corporation alleges as follows:

### The Parties

1.    Deluxe Corporation ("Deluxe") is a corporation organized under the laws of Minnesota, with its principal place of business at 3680 Victoria Street North, Shoreview, Minnesota 55126-2966.

2.      On information and belief, Monotype Imaging, Inc. ("Monotype") is a corporation organized under the laws of Delaware with its principal place of business at 500 Unicorn Park Drive, Woburn, Massachusetts 01801.

3.      On information and belief, Linotype GmbH ("Linotype") is a foreign limited liability corporation with its principal place of business at Werner-Reimers-Strasse 2-4, 61352 Bad Homburg, Germany.

4.      On information and belief, International Typeface Corporation ("ITC") is a corporation organized under the laws of the State of New York with its principal place of business at 500 Unicorn Park Drive, Woburn, Massachusetts 01801.

## Jurisdiction and Venue

5.      This Court has subject matter jurisdiction over this claim pursuant to 28 U.S.C. § 1367.

6.      This Court has personal jurisdiction over Monotype, Linotype, and ITC (collectively, the "Plaintiffs") because the Plaintiffs are headquartered in or do business in the Commonwealth of Massachusetts and have commenced this action in Massachusetts.

7.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because this is the judicial district where Plaintiffs are seeking to enforce their U.S. trademark registrations against Deluxe.

## Facts

8.      Deluxe restates and incorporates by reference its answers to paragraphs 1-102 of Plaintiffs' Complaint.

9.      Deluxe is the licensee under a license agreement entitled "Multiple Copy End User License Agreement" (the "License") granted by Monotype Typography, Inc., dated April 30, 1996.  On information and belief, Monotype Typography, Inc. is the predecessor-in-interest

of Plaintiff Monotype.  The License is a valid and binding contract between Monotype and

Deluxe.  Deluxe has performed all of its obligations under the License, including by paying

Monotype money.

10.    Paragraph 2.01 of the License conveys a perpetual license from Monotype to

Deluxe.

11.    Paragraph 8.06 of the License states that "Deluxe shall be entitled during the term

of this license to use the Licensed Products without disturbance, subject only to the performance

of its obligations hereunder."

12.    Since the inception of the License, Deluxe has exercised its licensed rights by

printing checks, business forms, and other products for customers containing customer-specified

text displayed in Plaintiffs' typefaces.  Before the advent of Internet commerce, Deluxe

advertised product and typeface options via catalogs or similar printed materials and accepted

orders via telephone or mail.  In its advertising materials, Deluxe often included images of text

rendered in Plaintiffs' fonts and referred to Plaintiffs' typefaces by name.  In some cases, Deluxe

sent customers a paper "proof" of a product showing the customer's specified text rendered in

the customer's selected typeface, so that the customer could approve the preview before placing

an order for the final product.

13.    Since at least 2001, Deluxe has allowed customers to place orders for printed

products over the Internet as well.  Deluxe's webpages allow its customers to specify text to

appear on printed products and to select the typeface in which their text will appear.  As in its

print-advertising model, Deluxe facilitates customers' selection of typefaces in its website

advertising by providing samples of text rendered in Plaintiffs' fonts and by identifying

Plaintiffs' typefaces by name.  Upon receiving customer instructions, Deluxe, pursuant to the

License, uses the font software programs on its computers on its premises to create a static electronic image showing the customer's text rendered in the selected font in the form of a .swf or .jpg file. This static image is created on Deluxe's computers, <u>not</u> the customer's computers, and it is akin to an image on a piece of paper, in that it is not subject to manipulation by the customer and contains no embedded elements of the font software program. The graphic image is rendered in a pixelated, low resolution for demonstrative purposes only and is not suitable for printing final products. Deluxe sends this electronic "proof" to the customer over the Internet. If the customer approves the proof and places an order, Deluxe, pursuant to the License, prints the final product containing the text in the selected typeface at its facilities. Deluxe's Internet-ordering option thus provides an alternative medium for the advertising of its products and the acceptance of orders for products to be printed by Deluxe pursuant to the License.

14.     Deluxe has been openly engaging in its Internet-ordering business model for many years. Plaintiffs, as licensor under the License and as owners of alleged trademarks, had a duty to police the activities of licensees and the use of the alleged marks by third parties. Under Paragraph 3.03 of the License, Monotype had a right to audit Deluxe's use of the Licensed Products. Plaintiffs have had actual or inquiry knowledge of Deluxe's Internet-ordering business model, including its use of static electronic "proofs," for many years.

15.     In 2010, Deluxe contacted Monotype to inquire about obtaining a license for a new "web-to-print" business model it was launching. In this new model, customers visiting a Deluxe website would be able to customize a product online and then download and print electronic .pdf files showing how the customized product would look. Unlike the static proofs used in Deluxe's existing Internet-ordering model, these .pdf files would contain embedded versions of the font software and would allow for high-resolution viewing instead of pixelated,

low-resolution viewing. Further, the .pdf files would enable customers to use the font software on their own computers to manipulate and create text in a selected typeface for their own use. Monotype bid for this business but lost; Deluxe elected to license fonts for its "web-to-print" business from another provider instead. Deluxe does not use any of Plaintiffs' fonts in its "web-to-print" business.

16.   Following its loss of the "web-to-print" bid, Monotype began sending Deluxe correspondence asserting that Deluxe's longstanding Internet ordering practices exceeded the scope of the License, and that Deluxe's nominative fair use of Monotype's font names on Deluxe's websites constituted trademark infringement. Monotype's letters and demands were directed to Deluxe's Internet-ordering model, and the static electronic proofs it uses, not to Deluxe's new "web-to-print" business, which does not use any of Plaintiffs' fonts. Monotype has demanded that Deluxe cease exercising its licensed rights. Monotype has also demanded that Deluxe pay Monotype an unspecified additional fee in exchange for the licensed rights Deluxe has been exercising.

17.   Plaintiffs have brought the present action against Deluxe, alleging various counts of trademark infringement and breach of the License.

**COUNT I**
**Breach of Contract Against Monotype**

18.   Deluxe restates and incorporates by reference paragraphs 1-17 above, as if fully set forth herein.

19.   The License is a valid and binding contract between Monotype and Deluxe.

20.   Paragraph 2.01 of the License conveys a perpetual license from Monotype to Deluxe.

21.    Paragraph 8.06 of the License states that "Deluxe shall be entitled during the term of this license to use the Licensed Products without disturbance, subject only to the performance of its obligations hereunder."

22.    Deluxe has performed all of its obligations under the License, including by paying Monotype money.

23.    Monotype has sent Deluxe correspondence repudiating the License and demanding that Deluxe cease exercising its licensed rights.  Monotype has used accusations of breach in an attempt to coerce Deluxe into entering a new licensing arrangement.  Monotype has brought an enforcement action against Deluxe based on Deluxe's exercise of its licensed rights.

24.    By taking the actions set forth above, including by repudiating the License and bringing an enforcement action against Deluxe based on Deluxe's exercise of its licensed rights, Monotype has breached the License.

25.    Deluxe has been harmed as a result of Monotype's actions.

## COUNT II
### Violation of Mass. Gen. Laws ch. 93A Against All Plaintiffs

26.    Deluxe restates and incorporates by reference paragraphs 1-25 above, as if fully set forth herein.

27.    Deluxe and Plaintiffs are persons engaged in the conduct of trade or commerce within the meaning of Mass. Gen. Laws ch. 93A, § 11.

28.    Plaintiffs' acts, conduct, and practices described above occurred and are occurring primarily and substantially within the Commonwealth of Massachusetts.

29.    Plaintiffs' acts, conduct, and practices described above – including without limitation repudiating the License, using accusations of breach and of trademark infringement to attempt to coerce Deluxe into entering a new licensing arrangement, and bringing an

enforcement action against Deluxe based on Deluxe's exercise of its licensed rights and Deluxe's nominative fair use of Plaintiffs' font names – constitute unfair methods of competition and/or unfair or deceptive acts or practices, which are unlawful under Mass. Gen. Laws ch. 93A.

30.    Deluxe has been damaged as a result of Plaintiffs' violations of Mass. Gen. Laws ch. 93A.

**PRAYER FOR RELIEF**

Wherefore, Deluxe respectfully requests judgment against Plaintiffs as follows:

1.    Entering judgment in favor of Deluxe and against Plaintiffs on all claims and counterclaims.

2.    Ordering that Deluxe be awarded all damages incurred by Deluxe as a result of Plaintiffs' breach of contract and violations of Mass. Gen. Laws ch. 93A.

3.    Ordering that Deluxe be awarded all of Deluxe's costs and reasonable attorneys' fees and expenses.

4.    Ordering that Deluxe be awarded enhanced damages as permitted by law.

5.    Ordering that Deluxe be awarded prejudgment interest as permitted by law.

6.    Ordering that Deluxe be awarded such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Deluxe demands a trial by jury of all issues and claims so triable, pursuant to Fed. R. Civ. P. 38.

Respectfully submitted,
/s/ Julia Huston
Julia Huston (BBO #562160)
Jenevieve J. Maerker (BBO #670266)
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02110

- 19 -

Telephone: 617-832-1000
Fax: 617-832-7000
jhuston@foleyhoag.com
jmaerker@foleyhoag.com

Counsel for Deluxe Corporation

Dated:  January 11, 2012

## CERTIFICATE OF SERVICE

I, Julia Huston, hereby certify that this document filed through the ECF system will be sent electronically on January 11, 2012 to the following registered participants as identified on the Notice of Electronic Filing (NEF):

R. David Hosp, Esq.
Mark S. Puzella, Esq.
Goodwin Procter LLP
Exchange Place
53 State Street
Boston, MA 02109-2881
Telephone: 617-570-1000
Fax: 617-523-1231
dhosp@goodwinprocter.com
mpuzella@goodwinprocter.com

/s/ Julia Huston
Julia Huston

B3967459.v3