**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| MONOTYPE IMAGING INC., LINOTYPE ) GMBH, INTERNATIONAL TYPEFACE ) CORPORATION, ) Plaintiffs, ) ) v. ) ) DELUXE CORPORATION, ) Defendant. ) ) | Civil Action No. 11-11985-NMG |

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiffs Monotype Imaging, Inc. ("Monotype"), Linotype GMBH ("Linotype") and International Typeface Corporation ("ITC") (collectively, "plaintiffs") bring suit against defendant Deluxe Corporation ("Deluxe") for trademark infringement (Counts I through IV), unfair competition in violation of M.G.L. c. 93A ("Chapter 93A") (Count V) and breach of contract in violation of Minnesota law (Count VI).

Deluxe has answered the complaint and asserted two counterclaims for breach of contract and unfair business practices under Chapter 93A. Monotype's motion to dismiss those counterclaims is currently pending before the Court.

## I. Background

Plaintiffs are related companies which collectively comprise the leading provider of typeface products and font software

programs. "Typefaces" are fonts, such as Times New Roman, Courier, etc., and "font software programs" are computer programs which generate visual renderings of text in selected typefaces. Monotype creates and owns original font software programs and sublicenses for distribution to others original font software programs owned by Linotype and ITC.

Monotype entered into a font software program licensing agreement ("the licensing agreement") with Deluxe in April, 1996. Deluxe is a leading printer of custom checks, business forms and other business products. Deluxe uses Monotype's font software program, among other programs, to allow its customers to specify which font to use for the text that will appear in their printed products.

## A. Plaintiff's Complaint

Plaintiffs have asserted claims against Deluxe for trademark infringement and breach of contract. Plaintiffs' allegations of trademark infringement concern the federally registered trademarks: Avant Garde, Zapf Chancery, Helvetica, Melior and New Century Schoolbook (collectively, "the Marks"). The Marks are owned by ITC or Linotype and licensed to Monotype, the entity authorized to enforce the legal rights to which the owners are entitled.

Plaintiffs contend that they have not authorized or licensed Deluxe to use the Marks but that Deluxe uses them on its website

in a "drop down" menu of typeface choices.  Plaintiffs note that
Deluxe does not need to use the Marks insofar as Deluxe is able
to inform customers of their various typeface options by simply
displaying a word or phrase in those typefaces.  That approach,
plaintiffs contend, permits a customer to make an appropriate
selection and avoids infringement.

In addition to trademark infringement, and more germane to
the pending motion to dismiss, plaintiffs assert that Deluxe is
in material breach of the licensing agreement with respect to its
Internet sales.  Prior to the advent of Internet commerce, Deluxe
advertised product and typeface options in catalogs or similar
printed materials, accepted orders over the telephone or by mail
and sent customers paper "proofs" of customized products for
approval before printing a full order.  Now, Deluxe also allows
customers to place orders, and to select a typeface to apply to
text, on its website.  After an order is placed, Deluxe emails
customers an electronic "proof" (an electronic image of how the
text will appear in the selected font) for final approval before
it prints the full order.

The crux of the contract dispute is whether those Internet-
based sales, and the use of electronic "proofs", are prohibited
under the licensing agreement.  That agreement allows Deluxe to
print its checks and other business products using Monotype's
font software program but provides that 1) the program may be

used only internally, i.e., by Deluxe employees on Deluxe premises, see ¶ 2.01, ¶ 4.01-02, 2) Deluxe may not transfer "Licensed Products" to any third party, see ¶ 2.01, and 3) the right to reproduce the Licensed Products is for concurrent use on 100 printers, see Exhibit A.

Plaintiffs contend that Deluxe violates those provisions by allowing third-party Internet users to select and use Monotype's software programs from third-party computers located around the world. They also assert that the electronic "proofs" Deluxe emails its customers constitute "bitmaps", a Licensed Product which may not be transferred to third parties. Licensed Products are defined in the licensing agreement to include:

> Outlines, Bitmaps, printer or screen fonts, as further described in Exhibit A, and all Derivative Works and Related Materials.

¶ 1.01(d). "Bitmaps", in turn, are defined in the agreement as

> machine readable digital representations of a single Typeface style in a fixed resolution, weight, width, format, and point size.

¶ 1.01(a).

## B. Deluxe's Response and Counterclaims

Deluxe responds that its activities are within the scope of its licensed rights because the electronic proofs transferred to customers are not "bitmaps". In the context of computer font software and the licensing agreement itself, it explains, the term "bitmap" refers to font software and not, as plaintiffs

contend, to an electronic image of text in a given typeface.  In

support, Deluxe notes that the definitions of "bitmaps" and

"outlines" are juxtaposed in the licensing agreement.  "Outlines"

are

> machine readable digital representation[s] of a single
> Typeface style, in a fixed weight, width, in Postscript
> Type 1 format [which] may be represented by varying
> resolutions.

¶ 1.01(f).  According to Deluxe, "Bitmap" and "Outline" refer to

two different common formats for font software programs and the

licensing agreement only prohibits Deluxe from transferring the

font software programs, but not the output of those programs, to

third parties off its premises.

Deluxe also turns the tables and contends that it is

Monotype which has breached the licensing agreement in

retaliation for a failed business deal with Deluxe.  According to

Deluxe, Monotype's purported interpretation of the defined term

"bitmap" to include the static electronic proofs of Deluxe is

contrary to the plain language of that agreement and the common

understanding of such terms in the field.  Deluxe adds that when

plaintiffs finally filed the instant lawsuit, Deluxe had been

openly engaged in the allegedly infringing Internet sales for

more than a decade.

What precipitated the lawsuit, according to Deluxe, is its

rejection of the Monotype bid with respect to Deluxe's newly-

launched "web-to-print" business line.  That line allows Deluxe

customers to type text, apply different typeface designs to the
text and contemporaneously view and print the customized product.
Deluxe purportedly recognized that such a line would be outside
the scope of its existing licensing agreement with Monotype and
thus solicited bids for other licensing font software.

Deluxe contends that, following Monotype's unsuccessful bid,
Monotype began asserting that Deluxe's long-standing Internet
sales practices exceeded the scope of the licensing agreement and
that its use of the Marks was infringing.  Monotype allegedly
demanded both that Deluxe cease exercising its licensed rights
and pay Monotype an unspecified additional fee in exchange for a
waiver of its prior infringement.  When Deluxe refused, Monotype
filed the instant lawsuit.

Deluxe filed counterclaims for breach of contract and
violation of Chapter 93A based upon Monotype's alleged
1) repudiation of the licensing agreement and interference with
Deluxe's exercise of its license rights, and 2) filing of
pretextual and meritless claims for coercive purposes.

II.  **Procedural History**

Plaintiffs filed their complaint in November, 2011.
Defendant filed an answer in January, 2012, which included
various affirmative defenses and the two counterclaims described
above.  Shortly thereafter, plaintiffs filed a motion to dismiss
the counterclaims for failure to state a claim pursuant to Fed.

R. Civ. P. 12(b)(6). Defendant filed three separate assented-to motions to extend the time to respond to the motion to dismiss because the parties were engaging in settlement negotiations.

After negotiations proved unsuccessful, defendant filed an opposition to the motion to dismiss on April 30, 2012. The Court heard oral argument on the motion at a scheduling conference on May 10, 2012 and took the matter under advisement.

## III. Analysis

### A. Legal Standard

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. Nollet v. Justices of the Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000), aff'd, 248 F.3d 1127 (1st Cir. 2000). Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. See Nollet, 83

F. Supp. 2d at 208.

Although a court must accept as true all of the factual allegations contained in a complaint, that doctrine is not applicable to legal conclusions. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Threadbare recitals of the legal elements which are supported by mere conclusory statements do not suffice to state a cause of action. Id. Accordingly, a complaint does not state a claim for relief where the well-pled facts fail to warrant an inference of anything more than the mere possibility of misconduct. Id. at 1950.

**B.  Deluxe's Breach of Contract Claim**

Paragraph 8.06 of the licensing agreement provides that "Deluxe shall be entitled during the term of this license to use the Licensed Products without disturbance" as long as it performs its contractual obligations. Deluxe asserts that plaintiffs have breached that guarantee of undisturbed use by repudiating the license agreement, insisting that Deluxe cease exercising its licensed rights, demanding additional payment from Deluxe for past use and filing the instant lawsuit.

Plaintiffs offer two arguments in support of their motion to dismiss. Because the Court finds neither argument convincing, the motion to dismiss will be denied with respect to defendant's breach of contract claim.

First, plaintiffs contend that the defendant has failed to

plead any "disturbance" in its use of the Licensed Products.

According to plaintiffs, the only disturbance alleged in the

counterclaim relates to the mere filing of the instant lawsuit.

There is no allegation that plaintiffs have otherwise taken steps

to prevent Deluxe from conducting its business and, in fact,

Deluxe continues to use the Licensed Products.  Actions taken

merely to enforce legal rights under the contract do not

purportedly constitute a disturbance, especially considering that

other provisions of the contract describe certain rights of the

parties in the event of a dispute.  Specifically, plaintiffs

point to the parties' rights of termination and limited

liability.  If ¶ 8.06 was intended to prevent Monotype from

enforcing its rights under the contract, plaintiffs assert, those

other provisions would be nonsensical.

The Court disagrees.  What constitutes a "disturbance" in

use is not defined in the contract but its common meaning would

suggest that it is broad enough to cover Monotype's alleged

repudiation, insistence that Deluxe cease exercising its licensed

rights and demand for additional fees not contemplated by the

licensing agreement.  Provisions in the agreement which concern

termination or limited liability do not afford plaintiffs carte

blanche to make cease-and-desist demands with impunity.  For

example, the contract allows for termination only if the other

party has failed to comply with a material term or condition of

the agreement, a matter currently under vigorous dispute. If, as Deluxe asserts, it was acting within its licensed rights at all times and plaintiffs have asserted meritless demands or claims, plaintiffs' actions may constitute a disturbance.

Second, plaintiffs assert that Deluxe is not entitled to undisturbed use because Deluxe has conceded that it sends electronic proofs to customers and thus has admitted breaching the licensing agreement. That concession, however, in no way amounts to an admission of breach of license because Deluxe vigorously disputes that the electronic proofs it sends constitute "bitmaps". To resolve that issue one way or the other requires the Court to ascertain conclusively the meaning of the technical term "bitmap", which it declines to do at this juncture. The dispute over the meaning of that term is critical and can be decided only by reference to a full record and after the issue is thoroughly briefed.

### C. Deluxe's Chapter 93A Claim

Defendant's principal allegation under Chapter 93A is that plaintiffs acted in deliberate disregard of their contractual obligations and have initiated the instant lawsuit in an effort to coerce Deluxe into entering a new licensing agreement. Plaintiffs respond that the counterclaim must be dismissed because the defendant does not 1) allege any cognizable unfair practices in addition to a breach of contract or 2) allege any

injury as required by Chapter 93A.

Chapter 93A prohibits "unfair ... acts or practices in the conduct of any trade or commerce." M.G.L. c. 93A, § 2. That prohibition extends "to those engaged in trade or commerce in business transactions with others similarly engaged". Id. § 11. To be "unfair", the conduct in question "must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce", Levings v. Forbes & Wallace, Inc., 8 Mass. App. Ct. 498, 504 (1979), "have an extortionate quality that gives it the rancid flavor of unfairness", Atkinson v. Rosenthal, 33 Mass. App. Ct. 219, 226 (1992), or fall within "some common-law, statutory or other established concept of unfairness, or rises to the level of immoral, unethical, oppressive or unscrupulous." PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975). Although the question of unfairness is a factual inquiry, "the boundaries of what may qualify for consideration as a [Chapter] 93A violation is a question of law." Milliken & Co. v. Duro Textiles, LLC, 451 Mass. 547, 563 (2008) (citation omitted).

A mere breach of contract, without more, does not constitute a violation of Chapter 93A. Madan v. Royal Indem. Co., 26 Mass. App. Ct. 756, 762 (1989). In some cases, however, the facts giving rise to a breach of contract claim will also give rise to a Chapter 93A claim. Ecological Fibers, Inc. v. Kappa Graphic

-11-

Bd., B.V., 345 F. Supp. 2d 13, 15 (D. Mass. 2004). In order for
the Chapter 93A claim to succeed, the law requires more than a
mistake or honest dispute concerning the contract; some level of
bad faith must be present. Id. For example, Massachusetts
courts have consistently held that "conduct in disregard of known
contractual arrangements and intended to secure benefits for the
breaching party constitutes an unfair act or practice for c. 93A
purposes." Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass.
451, 474 (1991) (internal quotation omitted). Generally, such a
violation involves one party employing a breach of contract "to
gain an unfair advantage" over the other, vesting the breach with
"an extortionate quality." Arthur D. Little, Inc. v. Dooyang
Corp., 147 F.3d 47, 55 (1st Cir. 1998) (quoting Atkinson v.
Rosenthal, 33 Mass. App. Ct. 219, 226 (1992)).

Here, the counterclaim does not contain sufficient factual
allegations to show that the instant lawsuit was initiated in bad
faith. The Court instead discerns only an ordinary commercial
licensing dispute involving a reasonable disagreement over the
meaning of contract terms and the nature of Deluxe's use of the
Marks and electronic proofs in its Internet sales. See Citicorp
N.A., Inc. v. Ogden Martin Systs. of Haverhill, Inc., 8 F.Supp.2d
72, 77 (D. Mass. 1998) (commenting that a contract-based Chapter
93A should be dismissed "if it is apparent from the complaint
that the underlying contract dispute involves nothing more than

reasonably conflicting interpretations of a genuinely ambiguous contract term.").

Defendant's bald assertion that the suit was initiated "to coerce Deluxe into entering a new licensing arrangement" is supported by no factual allegations aside from allegations concerning the timing of the lawsuit, i.e., that it was purportedly initiated only after Monotype's failed bid and a decade after Deluxe openly began conducting the allegedly infringing Internet sales. Those allegations alone do not, however, suffice to support a plausible inference of bad faith where it is just as likely that Deluxe's inquiries about obtaining a new license prompted Monotype to investigate the existing use by Deluxe of its software programs. Iqbal, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation omitted)).

## ORDER

In accordance with the foregoing, plaintiffs' Motion to Dismiss Defendant's Counterclaims (Docket No. 14) is, with respect to defendant's claim for a violation of Chapter 93A, **ALLOWED**, but is, with respect to defendant's claim for breach of contract, **DENIED**.

**So ordered.**

_Nathaniel M. Gorton_

Nathaniel M. Gorton
United States District Judge

Dated July 26, 2012